# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:19-cr-00206-KJD-VCF |
| Plaintiff, | **ORDER** |
| v. | |
| KEVIN LAY, SR., | |
| Defendant. | |

Before the Court is an Emergency Motion for Revocation of Magistrate Judge's Release under 18 U.S.C. § 3145(a) filed by the United States (#14). Defendant Kevin Lay, Sr. has responded in opposition.

## I. Background

### A. Factual Background

Kevin Lay, Sr. is charged by indictment with one count of felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment stems from a shooting outside the Boulevard Mall in April of 2019. Video surveillance footage from the night of the incident captured a man wearing red pants, a red, white, and blue shirt, and a red hat standing in a parking lot outside of the Boulevard Mall parking garage.[1] The government claims that the man in the red pants and red, white, and blue shirt is Lay. The video shows Lay involved in a verbal altercation with an unknown person who is standing off-screen inside the garage. Throughout the footage, Lay is being restrained by another man but can be seen gesturing toward the unseen person in the garage. The video then appears to show gunfire coming from inside the garage and presumably aimed at Lay or his son who was also standing in the parking lot near

---

[1] The government manually filed the DVD footage on August 21, 2019, and the Court has viewed the surveillance video. See Not. Manual Filing, ECF No. 15.

Lay. Lay and his son returned fire, each firing multiple rounds into the parking garage while they attempted to find cover behind cars in the parking lot. The men then fled the scene.

The Las Vegas Metropolitan Police Department responded to the Boulevard Mall shootout and opened an investigation. That investigation led them to Lay. Police obtained both an arrest warrant for Lay and search warrant for Lay's residence. During the search, police recovered clothes similar to the clothes worn by the man shown in the security video (red pants, a red, white, and blue shirt, and red hat) and two separate Glock .40 caliber handguns. Govt.'s Mot. to Revoke 4–5, EFC No. 14. According to the government, police discovered the first firearm in a safe that also held Lay's personal identification like his passport, social security card, and driver license. Id. at 4–5. Police found the second firearm in the same room they found the clothing. Id. at 5. Police compared the shell casings from the Boulevard Mall shooting and found them to match the .40 caliber Glock handgun they found in Lay's home. Id.

### B. Procedural Background

The grand jury returned an indictment against Lay on August 13, 2019, and police arrested Lay six days later. See Indictment, ECF No. 1, Arrest Warrant, ECF No. 12. Lay was scheduled to appear before a magistrate judge for a detention hearing on August 19, 2019. That hearing was continued, however, when the government attempted to publish the video surveillance footage without first disclosing the video to Lay. The government produced the video to the defense, and Lay's detention hearing proceeded as planned on August 20, 2019.

Pretrial Services performed its initial investigation into Lay's criminal and personal history and recommended that Lay be denied bail. Although Pretrial Services determined that Lay was not a flight risk, it believed that no condition or combination of conditions could reasonably assure the public's safety if Lay were released pending trial. Pretrial Services based its recommendation on Lay's criminal history, which showed multiple arrests, charges, and convictions culminating with a 1992 conviction for murder with a deadly weapon, which Pretrial Services believed to be gang related. Lay's conviction was vacated by the Nevada Supreme Court in 2003 due to Brady violations. Mot. to Revoke at 7. Lay would eventually enter an Alford plea and accept a time-served sentence. Lay's Alford plea and felony conviction prohibit

Lay from owning or possessing a firearm or ammunition. Id.

Given Lay's criminal history, his alleged gang connections, the nature of his current offense, and his propensity to continue to violate the law, Pretrial Services recommended that Lay be denied bail. Over the recommendation of Pretrial Services, Magistrate Judge Koppe ordered Lay released on his own recognizance. Magistrate Judge Koppe admitted that she had serious concerns about Lay's willingness to comply with the conditions of pretrial release but found that a strict combination of conditions could provide the requisite protection to the community. The government immediately moved to stay the release order, which was granted. The government timely filed its emergency motion to revoke the magistrate judge's release decision under 18 U.S.C. § 3145(a), which allows the government to seek review by a "judge of a court having original jurisdiction over the offense." 18 U.S.C. § 3145(a). Lay promptly opposed the motion.

## II. Legal Standard

The Court reviews a magistrate judge's order of release de novo. See United States v. Koenig, 912 F.2d 1190, 1192–93 (9th Cir. 1990). The high standard imposed by de novo review is consistent with the goals of the Bail Reform Act, which envisioned a "more plenary" review process at the district level than at the appellate court. Id. at 1192. While the Court need not "start over" or "proceed as if the magistrate [judge's] decision and findings [do] not exist," it must review the facts and arguments without deference to the magistrate judge's decision. Id.; see also id. at 1191 citing United States v. Thibodeaux, 663 F.2d 520, 522 (5th Cir. 1981) ("[district court] is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer"). To that end, the Court may hold evidentiary hearings or order additional briefing before rendering a decision. Id. at 1193; United States v. Delker, 757 F.2d 1390, 1394 (9th Cir. 1985). Alternatively, the Court may decide the motion without a hearing. See LR 78-1 (district court may decide "all motions . . . with or without a hearing").

## III. Analysis

The Bail Reform Act allows pretrial release unless the Court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and

the safety of any other person and the community." 18 U.S.C. § 3142(e). Section 3142(e) is concerned with two things: the defendant's appearance at later court dates and the danger a released defendant poses to others. As to a defendant's risk of flight, the government must prove by a preponderance of the evidence that the defendant will not appear as required. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). As for a defendant's danger to the community, the government faces a higher burden. The government must show by clear and convincing evidence that no pretrial conditions could reasonably assure the public's safety. 18 U.S.C. § 3142(f)(2)(B); Motamedi, 767 F.2d at 1406. Neither the government nor Pretrial Services believe Lay to be a flight risk. Accordingly, the Court limits its analysis to whether the government has shown by clear and convincing evidence that no pretrial conditions could reasonably assure the public's safety if Lay were released pending trial.

The Bail Reform Act requires the least restrictive conditions possible to promote compliance with the Court's orders and ensure the safety of the community. See 18 U.S.C. § 3142(c)(2); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991). To determine whether conditions would reasonably ensure the public's safety, § 3142(g) provides four factors to consider: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the person's character and criminal history; and (4) the nature and seriousness of the danger to the community posed by the defendant's release. 18 U.S.C. § 3142(g)(1)–(4). If the government demonstrates by clear and convincing evidence the factors weigh against pretrial release, the Court will deny bail.

**A. The Seriousness of Lay's Charged Offense**

The parties contest what the nature of Lay's charged offense actually is. Lay urges the Court to confine its analysis here to what is charged in the indictment, namely, one count of a felon in possession of a firearm. He argues that the Court cannot consider his alleged involvement in the Boulevard Mall incident because he is not being charged[2] for it. Resp. to

---

[2] The State of Nevada initially charged Lay with assault with a deadly weapon in connection with the Boulevard Mall shootout. The State dropped the charges when it could not locate or persuade a victim to press charges. Mot. to Revoke at 6.

- 4 -

Moto to Revoke 6, ECF No. 16. Lay concludes that the Court should isolate its bail evaluation to the two weapons found in his home, making the Boulevard Mall incident irrelevant. The government counters that the Court can and should consider Lay's actions leading up to police seizing the firearms from Lay's home, including the Boulevard Mall incident. Mot. to Revoke 3, ECF No. 14. The government argues that Lay's apparent decision to carry a loaded weapon into a crowded restaurant and bar are evidence that he would not comply with pretrial-release conditions.

The Court agrees with the government that it is appropriate to consider Lay's actions leading up to and during the Boulevard Mall incident to determine whether pretrial-release conditions would reasonably ensure the public's safety. In reality, the charges against Lay are not as pedestrian as Lay would have the Court believe. Frankly, this is not a case of police finding a firearm in the home of a felon. Lay appears to have made the conscious decision to take the weapon from his home to a crowded public place despite not being legally allowed to own or possess the weapon. Further, even though police ultimately seized the firearms in Lay's home and subsequently charged Lay for their possession, the charges against Lay would include his possession of the firearms the night of the Boulevard Mall incident. Lay's argument that he only discharged the weapon in self-defense does not minimize his decision to possess a firearm as an ex-felon. Lay brandished the weapon long before the first shots were fired. He had already drawn the weapon while a third-party attempted to defuse the situation.

The Court finds it appropriate to consider the entirety of Lay's alleged behavior, including the Boulevard Mall incident, because it is evidence of Lay's unwillingness to comply with the conditions of his pretrial release. Accordingly, the nature of Lay's charges weighs against pretrial release.

**B. The Weight of the Evidence Against Lay**

This factor is the least important of the four § 3142(g) factors. Section 3142(g) requires the Court to consider the weight of the evidence against a pretrial defendant but cautions the Court against overweighting this one factor. The risk in considering the weight of the evidence at this stage is two-fold. First, the Court reviews the § 3142(g) factors at the very beginning of the

prosecution. There has been little investigation or discovery performed, and the relative facts are still unsettled. Second, in evaluating the evidence at this stage, the Court risks making a preliminary determination of guilt that could lead to the Court imposing punishment in the form of pretrial detention. Motamedi, 767 F.2d at 1408. Nevertheless, the Court must still evaluate the weight of the evidence against Lay and finds that it weighs against pretrial release.

The government provided footage from a security camera at the Boulevard Mall that captured two people firing shots at an unknown shooter concealed within a parking garage. The government argues that Lay is one of the shooters firing into the parking garage. The government bases its identification on the distinct clothing Lay allegedly wore that evening: red pants, a red, white, and blue short-sleeved FILA shirt, and a red hat. Mot. to Revoke at 3. When police executed a search warrant on Lay's home, they found clothes matching the clothes of one shooter from the video. Id. at 5. The officers also found two firearms during their search, one of which was found in the same room as the clothing. Id. The other firearm was found inside a safe that contained Lay's personal identification information, including his passport, social security card, and driver license. Id. at 4–5. Additionally, the government alleges that one of the weapons had Lay's DNA on it and the other matched the shell casings found at the Boulevard Mall after the shooting. Clearly, Lay will dispute that evidence. However, at this stage, the weight of the evidence weighs against pretrial release.

### C. Lay's Personal Characteristics and Criminal History

Lay has multiple arrests and convictions dating back to 1988. However, Lay's most recent criminal conviction was in 2012 for misdemeanor DUI. Lay's last felony conviction occurred in 1992, when he was convicted of murder with a deadly weapon. Mot. to Revoke at 6–7. The Nevada Supreme Court vacated Lay's conviction in 2003, citing a Brady violation. Id. at 7. Rather than re-try Lay, the State offered him a time-served sentence in exchange for an Alford plea, which Lay accepted. Id. Despite the Alford plea, Lay remained a felon and was prohibited from possessing a firearm or ammunition. After 2012, Lay was not arrested again until after the Boulevard Mall incident in 2019.

Lay's personal history and employment history show both stability and support of friends

and family. Resp. to Mot. to Vacate at 7. Lay purchased his home sixteen years ago. Id. He lives there with his girlfriend of ten years. Id. Lay has held the same job for fourteen years. Id. Two of Lay's supervisors attended both of Lay's detention hearings and have assured Lay that he will continue his employment if released. Id. Besides the DUI convictions, Lay does not have a history of substance abuse and does not have any drug-related convictions on his record. Last, Lay has volunteered in his community. Id.

While it is true the Lay has been convicted of a felony and has multiple other arrests and charges, those charges are dated. Lay has largely stayed out of trouble since 2012. Accordingly, the Court finds that Lay's personal characteristics and lack of recent criminal history weigh marginally in favor of pretrial release.

**D. Danger to the Community if Lay is Released**

Section 3142(g)'s final factor contemplates the danger Lay would pose to the public if he were released pending trial. Before Lay's detention hearing, Pretrial Services prepared a report, recommending that the magistrate judge deny pretrial release. Pretrial Services found that there were no suitable conditions of release that would reasonably assure the public's safety if Lay were released. Pretrial Services provided the report to this Court and has since reaffirmed its recommendation that the Court deny pretrial release. It lists five reasons for denial: (1) the nature of Lay's charges; (2) the prior arrests and convictions for violent crimes in Lay's criminal history; (3) the likelihood that Lay will continue to engage in criminal activity; (4) the evidence of Lay's gang ties; and (5) the active case against Lay.

The Court has reviewed Pretrial Services' memo and agrees that no set of conditions would reasonably assure the safety of the community if Lay is released. The night of the Boulevard Mall incident, Lay carried a loaded firearm to the Casa Grill and Bar. Dozens, if not hundreds, of people filtered through the restaurant that night, and the surveillance footage shows many of these people walking to their cars within feet of where Lay and at least two other men would exchange gunfire. Lay did not hesitate to fire his weapon, nor did he seek cover or attempt to withdraw himself from the altercation despite being visibly restrained by another person. Although it is unclear whether Lay fired first, he needed no time to draw the weapon from his

waistband before firing because he was already brandishing the firearm before the first shots rang out. Then when Lay began shooting, he blindly discharged several rounds in the general direction of the incoming fire without regard for the many bystanders in the parking lot and garage. Any of Lay's stray rounds could have struck the people leaving the mall. All of this happened despite Lay being a felon and being prohibited from owning or possessing a firearm or ammunition in the first place.

Lay's decision to carry, brandish, and discharge a firearm despite being legally prohibited from owning or possessing such weapons evince an utter disregard for the law, which begs the question: if Lay could not be trusted to comply with the law then, how can the Court trust that Lay will comply with the conditions of his pretrial release? The Court finds that it cannot. In sum, three of the four § 3142(g) factors weigh against pretrial release. Lay's employment history and lack of recent criminal history is the only factor supporting release. However, the violent and dangerous nature of Lay's offense demonstrates that pretrial conditions could not reasonably assure the public's safety if he were to be released. Therefore, the Court finds that the government has shown by clear and convincing evidence that Lay does not qualify for pretrial release under 18 U.S.C. § 3142(g).

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that the government's Emergency Motion for Revocation of Magistrate Judge's Release Order (#14) is **GRANTED**.

Dated this 23rd day of August, 2019.

_____
Kent J. Dawson
United States District Judge